UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PATRICIA BOUCHER, on behalf of herself
and all others similarly situated,

                 Plaintiffs,

       vs.

DYNIA & ASSOCIATES, LLC, an Illinois
Limited Liability Company; ALFRED S.
DYNIA, Individually and in his Official
Capacity on behalf of DYNIA &
ASSOCIATES, LLC; ANTHONY CREWS,
Individually and in his Official Capacity on
behalf of DYNIA & ASSOCIATES, LLC;
GREG NEELY, Individually and in his Official
Capacity on behalf of DYNIA &
ASSOCIATES, LLC; MICHAEL PROWICZ,
Individually and in his Official Capacity on
behalf of DYNIA & ASSOCIATES, LLC;
TERRENCE FOGARTY, Individually and in
his Official Capacity on behalf of DYNIA &
ASSOCIATES, LLC; AHMAD MERRITT,
Individually and in his Official Capacity on
behalf of DYNIA & ASSOCIATES, LLC;
SECOND ROUND LP, a Texas Limited
Liability Company; and, JOHN AND JANE
DOES NUMBERS 1 THROUGH 25,

                 Defendants.

_____/

Case No.: _____

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

      COMES NOW the Plaintiff, Patricia Boucher ("Plaintiff" or "BOUCHER"), on behalf of

herself and all others similarly situated, and by way of this Class Action Complaint against the

Defendants, says:

## I.  PRELIMINARY STATEMENT

1.      Plaintiff, on behalf of herself and all others similarly situated, and demanding a trial by jury, brings this action for the illegal practices of the Defendants DYNIA & ASSOCIATES, LLC ("DYNIA & ASSOCIATES"), ALFRED S. DYNIA ("DYNIA"), ANTHONY CREWS ("CREWS"), GREG NEELY ("NEELY"), MICHAEL PROWICZ ("PROWICZ"), TERRENCE FOGARTY ("FOGARTY"), AHMAD MERRITT ("MERRITT"), SECOND ROUND, LP ("SECOND ROUND"), and JOHN AND JANE DOES numbers 1 through 25 (collectively referred to hereinafter as "Defendants") who, *inter alia*, used false, deceptive, misleading, unconscionable, and other illegal practices, in connection with their attempts to collect an alleged debt from the Plaintiff and others.

2.      The Plaintiff alleges that Defendants' collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and the Texas Debt Collection Practices Act, Tex. Fin. Code §§ 392, *et seq.* ("TDCPA").

3.      Such violative collection practices include, *inter alia*, sending consumers written communications that:

      (a)      make false, deceptive, and misleading representations that Defendants are allowed and permitted by law to collect a credit card processing fee for credit card payments;

      (b)      Collecting and attempting to collect interest and other amounts that are not permitted by law or contract to be collected;

      (c)      fail to state the amount of the consumer's debt; and

      (d)      fail to identify the creditor of the consumer's debt.

4.      The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

5.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Sixth Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir. 2008).

6.      The FDCPA applies to lawyers regularly engaged in consumer debt-collection litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Schroyer v. Frankel*, 197 F.3d 1170, 1173-74 (6th Cir. 1999); *See also Kistner*, 518 F.3d 433 (the law firm's owner may also be individually liable).

7.      To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1)-(16). Among these *per se* violations prohibited by that section are: false representations concerning the character,

amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

8.      To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8). Included among the *per se* violations prohibited in this section are the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly permitted by law, 15 U.S.C. § 1692f (1).

9.      The TDCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010)

10.      The Plaintiff, on behalf of herself and all others similarly situated, seeks statutory damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, TDCPA, and all other common law or statutory regimes.

11.      This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2)

## II. PARTIES

12.      Plaintiff is a natural person.

13.      At all times relevant to this complaint, Plaintiff resided in the City of Livonia, County of Wayne, State of Michigan.

14.     At all times relevant to this complaint, DYNIA & ASSOCIATES is law firm, which exists as a for-profit Limited Liability Company pursuant to the laws of the State of Illinois.

15.     At all times relevant to this lawsuit, DYNIA & ASSOCIATES maintains its principal business address at 1400 East Touhy Avenue, Suite G2, City of Des Plaines, Cook County, Illinois.

16.     Plaintiff is informed and believes, and on that basis alleges, that DYNIA is a natural person who resides in City of Chicago, Cook County, Illinois.

17.     Plaintiff is informed and believes, and on that basis alleges, that CREWS is a natural person who resides in City of Naperville, DuPage County, Illinois.

18.     Plaintiff is informed and believes, and on that basis alleges, that NEELY is a natural person who resides in Village of Hainesville, Lake County, Illinois.

19.     Plaintiff is informed and believes, and on that basis alleges, that PROWICZ is a natural person who resides in Village of Hampshire, Kane County, Illinois.

20.     Plaintiff is informed and believes, and on that basis alleges, that FOGARTY is a natural person who resides in Village of Palos Park, Cook County, Illinois.

21.     Plaintiff is informed and believes, and on that basis alleges, that MERRITT is a natural person who resides in Village of Lake Bluff, Lake County, Illinois.

22.     At all times relevant to this lawsuit, SECOND ROUND is a Limited Liability Company existing pursuant to the laws of the State of Texas.

23.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this lawsuit SECOND ROUND maintains its principal place of business at 817 The High Road, City of Austin, Travis County, Texas.

24.     Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

25.     The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, oversaw, and engaged in the illegal policies and procedures used by employees of DYNIA & ASSOCIATES and SECOND ROUND that are the subject of this complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by DYNIA & ASSOCIATES and SECOND ROUND and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

### III. JURISDICTION & VENUE

26.     Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337.

27.     Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367.

28.     Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

29.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because each of the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

## IV. FACTS CONCERNING PLAINTIFF

30.     Sometime prior to June 30, 2014, Plaintiff allegedly incurred a financial obligation to Synchrony Bank fka GE Capital Retail Bank ("Synchrony Obligation").

31.     The Synchrony Obligation arose out of a transaction in which the money, property, insurance, or services are the subject of the transaction that are primarily for personal, family, or household purposes.

32.     At some point after Plaintiff's alleged default, the original creditor of the Synchrony Obligation determined that the debt was uncollectable, and therefore decided to "charge-off" the debt.

33.     Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

34.     Plaintiff is informed and believes, and on that basis alleges, that after concluding that the Synchrony Obligation was in default, Synchrony charged-off the Synchrony Obligation and, together with hundreds or thousands of other charged-off open-ended consumer credit accounts, sold the Synchrony Obligation, an unknown purchaser of defaulted consumer debts for pennies on the dollar.

35.     Defendants contend that the Synchrony Obligation is in default.

36.     The alleged Synchrony Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

37.     The alleged Synchrony Obligation is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

38.     Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

39.     Plaintiff is, at all times relevant to this complaint, a "consumer" as that term is defined by Tex. Fin. Code § 392.001(1).

40.     Plaintiff is informed and believes, and on that basis alleges, that sometime prior to June 30, 2014, an unknown subsequent creditor of the Synchrony Obligation either directly or through intermediate transactions, assigned, placed, or transferred the debt to an unknown purchaser of defaulted debt, but not to SECOND ROUND.

41.     According to its website, SECOND ROUND markets itself as "a receivables management firm serving businesses of all types nationwide."

42.      According to its website, SECOND ROUND markets itself as providing "the most efficient and effective recovery engine for charged-off accounts in the industry" and that it "understand[s] our clients' markets and challenges and will always treat ***their*** customers with the utmost respect during the recovery process." (Emphasis added).

43.     Plaintiff is informed and believes, and on that basis alleges, that SECOND ROUND does not purchase debts itself, but rather it is a *servicer* of defaulted consumer debts that are owned by third-party debt purchasing entities who hire SECOND ROUND to collect debt.

44.     SECOND ROUND collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself and other debt buyers using the U.S. Mail, telephone, and Internet.

45.     SECOND ROUND is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

46.     SECOND ROUND is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

47.     SECOND ROUND is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

48.     SECOND ROUND is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

49.     SECOND ROUND is not a "creditor" as defined by 15 U.S.C. § 1692a(4).

50.     SECOND ROUND is not a "creditor" as defined by Tex. Finance Code § 392.001 (3).

51.     In connection with its debt servicing operations, SECOND ROUND routinely hires other debt collection companies and law firms, such as DYNIA & ASSOCIATES, to send dunning written communications to consumers in the State of Michigan and elsewhere in an effort to collect money on the defaulted debts it acquires.

52.     Plaintiff is informed and believes, and on that basis alleges, that sometime prior to June 30, 2014, and within the one year period immediately preceding the filing of this action, SECOND ROUND either directly or through intermediate transactions assigned, placed, or transferred the Synchrony Obligation to DYNIA & ASSOCIATES for collection.

53.     DYNIA & ASSOCIATES is a law firm staffed with attorneys and non-attorneys who collect, and attempt to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

54.     DYNIA & ASSOCIATES is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

55.     DYNIA & ASSOCIATES is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

56.     DYNIA & ASSOCIATES is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

57.     DYNIA & ASSOCIATES is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

58.     On information and belief, DYNIA is a principal owner, director, shareholder, and/or managing partner of DYNIA & ASSOCIATES.

59.     DYNIA is an attorney who attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

60.     DYNIA personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and benefitted financially from all of the illegal policies and procedures used by himself and other employees of DYNIA & ASSOCIATES that are complained of herein.

61.     DYNIA is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

62.     On information and belief, CREWS is a principal owner, director, shareholder, officer, and/or manager of DYNIA & ASSOCIATES.

63.     CREWS attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

-10-

64.     CREWS personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and benefitted financially from all of the illegal policies and procedures used by himself and other employees of DYNIA & ASSOCIATES that are complained of herein.

65.     CREWS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

66.     On information and belief, NEELY is a principal owner, director, shareholder, officer, and/or manager of DYNIA & ASSOCIATES.

67.     NEELY attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

68.     NEELY personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and benefitted financially from all of the illegal policies and procedures used by himself and other employees of DYNIA & ASSOCIATES that are complained of herein.

69.     NEELY is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

70.     On information and belief, PROWICZ is a principal owner, director, shareholder, officer, and/or manager of DYNIA & ASSOCIATES.

71.     PROWICZ attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

72.     PROWICZ personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and benefitted financially

from all of the illegal policies and procedures used by himself and other employees of DYNIA &
ASSOCIATES that are complained of herein.

73.     PROWICZ is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

74.     On information and belief, FOGARTY is a principal owner, director, shareholder,
officer, general counsel, and/or manager of DYNIA & ASSOCIATES.

75.     FOGARTY is an attorney who attempts to collect debts incurred, or alleged to have
been incurred, for personal, family, or household purposes on behalf of creditors using the U.S.
Mail, telephone, and Internet.

76.     FOGARTY personally implemented, and with knowledge such practices were
contrary to law, engaged in, acted consistent with, managed, oversaw, and benefitted financially
from all of the illegal policies and procedures used by himself and other employees of DYNIA &
ASSOCIATES that are complained of herein.

77.     FOGARTY is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

78.     On information and belief, MERRITT is a principal owner, director, shareholder,
officer, and/or manager of DYNIA & ASSOCIATES.

79.     MERRITT attempts to collect debts incurred, or alleged to have been incurred, for
personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and
Internet.

80.     MERRITT personally implemented, and with knowledge such practices were
contrary to law, engaged in, acted consistent with, managed, oversaw, and benefitted financially
from all of the illegal policies and procedures used by himself and other employees of DYNIA &
ASSOCIATES that are complained of herein.

81.     MERRITT is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

82.     On or about June 30, 2014, DYNIA & ASSOCIATES mailed a collection letter concerning the Synchrony Obligation, which is dated June 30, 2014, and which Plaintiff received in the ordinary course of mail. ("6/30/2014 Letter"). A true and correct copy of the 6/30/2014 Letter is attached hereto as ***Exhibit A***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and Plaintiff's home address in an effort to protect Plaintiff's privacy.

83.     The 6/30/2014 Letter was sent, or caused to be sent, by persons employed by Defendants as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

84.     The 6/30/2014 Letter was sent, or caused to be sent, by persons employed by Defendants as a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

85.     The 6/30/2014 Letter was sent, or caused to be sent, by persons employed by a "third-party debt collector" as defined by Tex. Fin. Code § 392.001(7).

86.     The 6/30/2014 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

87.     The 6/30/2014 Letter was sent to Plaintiff in connection with the collection of a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

88.     The 6/30/2014 Letter was sent to Plaintiff in connection with "debt collection" as defined by Tex. Fin. Code § 392.001(5)

89.     The 6/30/2014 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

90.     DYNIA & ASSOCIATES represented to Plaintiff that SECOND ROUND purchased the Synchrony Obligation and, therefore, is the "current creditor" of the debt even though Plaintiff is informed and believes, and on that basis alleges, this is untrue.

91.     Plaintiff is informed and believes, and on that basis alleges, that SECOND ROUND is not the "current creditor" of the Synchrony Obligation.

92.     Plaintiff is informed and believes, and on that basis alleges, that the statement in the 6/30/2014 Letter that SECOND ROUND is the "current creditor" is false.

93.     Prior to receiving the 6/30/2014 Letter, Plaintiff had neither never heard of, nor had any relationship with, DYNIA & ASSOCIATES or SECOND ROUND and, therefore, did not know if either was a legitimate company.

94.     Regarding the content of the 6/30/2014 letter, DYNIA & ASSOCIATES informed Plaintiff that "**if** [she] want[ed] to resolve this matter," DYNIA & ASSOCIATES was "offering an opportunity" to resolve the debt for a reduced amount (emphasis added).

95.     The 6/30/2014 Letter informed Plaintiff that if she was unable to afford to take advantage of the "opportunity," she was to call DYNIA & ASSOCIATES to make "further arrangements."

96.     The 6/30/2014 Letter further stated, that the "***offer*** shall be considered ***rescinded*** upon the removal of your account by our client." (Emphasis added).

97.     Plaintiff presumed that the 6/30/2014 Letter was a one-time or limited time offer as it implies that should Plaintiff fail to take advantage of the "opportunity," the Defendants would pursue legal and other "involuntary" remedies.

98.     Plaintiff also reasonably inferred – as would a "least sophisticated consumer" – that the 6/30/2014 Letter was a one-time or limited-time offer as it implies that SECOND ROUND might "rescind" the "opportunity" ***at any time*** and without notice and does not state that Defendants would renew the offer in the future.

-14-

99.     The statement in the 6/30/2014 Letter that SECOND ROUND would "rescind" the offer was false as SECOND ROUND will <u>always</u> accept the offer set forth in the letter and, in fact, will even accept a lower payment, even if it removes or recalls the account from DYNIA & ASSOCIATES.

100.    As Plaintiff understood the 6/30/2014 Letter, as would the least sophisticated consumer, the only way to settle the alleged Synchrony Obligation and avoid legal action (i.e., "involuntary resolution") against her was to pay the amount demanded or call DYNIA & ASSOCIATES.

101.    As Plaintiff understood the 6/30/2014 Letter upon receiving it, as would the least sophisticated consumer, the debt collection process has entered into a phase where SECOND ROUND through its attorneys, will – at any moment and without notice – begin to use procedures established by law and known to attorneys to collect the Synchrony Obligation.

102.    As Plaintiff understood the 6/30/2014 Letter upon receiving it, as would the least sophisticated consumer, her  property and other financial interests were in some potential jeopardy unless she paid the amount demanded.

103.    As Plaintiff understood the 6/30/2014 Letter upon receiving it, as would the least sophisticated consumer, she believed that a quick payment of a reduced amount of money allegedly owed would save her several thousand dollars and legal and/or other "involuntary" action against her by SECOND ROUND.

104.    As Plaintiff understood the 6/30/2014 Letter upon receiving it, as would the least sophisticated consumer, she believed that quick payment was the only way to take advantage of the "opportunity" as the offer would no longer be available to her if she first took the time to exercise his legal right and request verification of the alleged debt.

105.    Defendants' attempt to vitiate their culpability by stating that "our client" may recall the account; thereby rescinding the lesser payment "opportunity" was a patently false statement in that SECOND ROUND would always accept the "offer" and, in fact, would later even accept a much lower settlement amount.

106.    The only purpose of the 6/30/2014 Letter was to scare Plaintiff, and other least sophisticated consumers, into falsely believing that SECOND ROUND would hire attorneys who were prepared to, and regularly do, sue consumers such as Plaintiff in the State of Michigan if quick arrangements are not made to pay the alleged debt.

107.    With respect to consumers in the State of Michigan, DYNIA & ASSOCIATES and the other Defendants never pursue legal and/or "involuntary" action concerning the debts they seek to collect from consumers in the State of Michigan.

108.    Defendants intended that their materially false statements contained in the 6/30/2014 Letter would cause Plaintiff, and other least sophisticated consumers, confusion and a false sense of urgency with the obvious purpose of pushing Plaintiff and other least sophisticated consumers to make a rapid payment to take advantage of the purported limited time offer, while avoiding legal and/or other "involuntary" action.

109.    Defendants intended that their materially false and deceptive statements contained in the 6/30/2014 Letter cause Plaintiff and other least sophisticated consumers to incorrectly believe they would benefit legally and financially by immediately sending payment for the amount demanded in Defendants' collection letters rather than waiting to make such payment after investigating the debt.

110.    Defendants further violated the FDCPA in that the 6/30/2014 Letter also, *inter alia*, provides a box for the Consumer to complete and provide their credit card information in making

payment for the alleged debt. Immediately below the credit card information box is a statement that "a 3% credit card processing fee may be applied to your payment amount."

111.    Plaintiff is informed, and believes, and therefore alleges that the 6/30/2014 Letter is intended to falsely convey that Defendants are legally permitted to charge a 3% credit card processing fee for credit card payments, when in fact such a fee/charge is neither authorized by contract nor permitted by law.

112.    The additional "3% credit card processing fee" charged and collected by Defendants constitutes the collection of an amount incidental to the principal obligation that is not expressly authorized by the agreement creating the debt or permitted by law.

113.    The Defendants' characterization of the additional 3% charge as a "processing fee" is false, deceptive, and misleading in that it is well in excess of the actual amount, if any, Defendants might incur with respect to Plaintiff's, or any other, credit card payment.

114.    The Defendants characterization of the additional 3% charge as a "processing fee" is false, deceptive, and misleading in that it fails to disclose the true nature of the fee and misrepresents the actual amount, if any, of any fee Defendants might incur.

115.    The Defendants' characterization of the additional 3% charge as a "processing fee" is false, deceptive, and misleading in that it is well in excess of what any bank or payment-processing entity would charge to process Plaintiff's credit card transaction.

116.    The Defendants' characterization of the additional 3% charge as a "processing fee" is false, deceptive, and misleading in that Plaintiff understood it to mean, as would the least sophisticated consumer, that Defendants are legally entitled to receive the fee when, in fact, they are not legally or contractually entitled to receive it.

117.    Defendants also violated the FDCPA in that the 6/30/2014 Letter, *inter alia*, states that Plaintiff's "**Current**" Balance is $2,358.78, then state they seek "voluntary resolution of the **Total** Amount Due," and then make a "Settlement Offer" by stating Plaintiff can "resolve [his] **Current** Balance of $2,358.78 for only $1,651.15."

118.    Upon reading the 6/30/2014 Letter, Plaintiff was confused, as would the least sophisticated consumer, by the varying use of the terms "**Current** Balance," "**Total Amount** Due," and "**Settlement** Offer."

119.    Nowhere in the 6/30/2014 Letter do Defendants disclose that late fees, interest, and/or other charges were accruing on daily and/or monthly basis on the Synchrony Obligation that Defendants were attempting to collect.

120.    The 6/30/2014 Letter failed to disclose that the amount of the Synchrony Obligation would increase due to Defendants' imposition of late fees, interest, and/or other charges that were accruing to the debt on a daily and/or monthly basis.

121.    Although the 6/30/2014 Letter states there is a "Current Balance" and further states there is an undisclosed "Total Amount Due" the letter does not disclose the date as of which those amounts were calculated and determined to be the full amount of the debt.

122.    The 6/30/2014 Letter does not state the effective date as of which the amounts Defendants sought to collect would suffice to pay off the Synchrony Obligation in full, nor does it acknowledge that the amount to pay the debt in full would, and did, vary on the basis of account adjustments by SECOND ROUND to reflect accrued interest and/or other fees and charges.

123.    The 6/30/2014 Letter was misleading to Plaintiff, as it would be to a least sophisticated consumer, who concluded that "Current Balance" stated as due ($2,358.78) and undisclosed "Total Amount Due" was due at any time, when in fact it was not and was instead

subject to an increasing adjustment by SECOND ROUND on a periodic basis.

124.    Upon receiving the 6/30/2014 Letter, Plaintiff was uncertain whether the "Current Balance" was accruing interest, late fees, and/or other charges as there was no disclosure or admonition indicating otherwise.

125.    Plaintiff is informed and believes, and on that basis alleges, that the "Current Balance" and "Total Amount Due," which is set forth in the 6/30/2014 Letter, and which Defendants sought to collect, contained undisclosed sums of interest and/or other fees that Defendants had no legal or contractual basis to collect.

Plaintiff is informed and believes, and on that basis alleges, that in the months following the 6/30/2014 Letter, SECOND ROUND added undisclosed sums of interest and other fees to the principal balance of the alleged Synchrony Obligation.

126.    A debt collector has a duty to correctly state the amount of the debt owed in cases like the present matter where the amount varies from day to day. 15 U.S.C. § 1692g(a)(1); *see also, Miller v. McCalla, Raymer, Patrick, Cobb, Nichols & Clark, LLC*, 214 F.3d 872 (7th Cir. 2000); *Goins v. JBC & Assocs.*, 352 F.Supp.2d 262, 269 (D. Conn. 2005); *Stonecypher v. Finkelstein Kern Steinberg & Cunningham*, 2011 U.S. Dist. LEXIS 88319 (E.D. Tenn. Aug. 9, 2011).

127.    Defendants' failure to correctly state the amount of the Synchrony Obligation allegedly owed left Plaintiff uncertain, as it would for the least sophisticated consumer, as to the amount of the debt actually owed.

128.    Defendants' failure to correctly state the amount of the Synchrony Obligation allegedly owed left Plaintiff uncertain, as it would for the least sophisticated consumer, as to the amount of savings and/or benefit gained, if any, by paying the purported "Settlement Offer."

129.    At all times relevant to the collection of the alleged Synchrony Obligation, there existed a principal-agent relationship between SECOND ROUND and the other named Defendants.

130.    At all times relevant to the collection of the alleged Synchrony Obligation, DYNIA & ASSOCIATES and the other named Defendants were also the agents for SECOND ROUND, acting within the course and scope of their employment at the time of the incidents complained of herein, and were under the direct supervision, control, and approval of SECOND ROUND.

131.    As the principal and a debt collector, SECOND ROUND is also vicariously liable for the illegal collection activities of other debt collection companies and collectors, such as the other named Defendants, all of who are working on its behalf to collect debts from consumers like Plaintiff.

132.    Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this complaint SECOND ROUND had actual knowledge that the other Defendants repeatedly or continuously engages in acts or practices that are prohibited by the TDCPA.

### V.  POLICIES AND PRACTICES COMPLAINED OF

133.    It is Defendants' policy and practice to send written collection communications, in the form attached as ***Exhibit A*** in connection with the collection of alleged consumer debts, which fail to state the amount of the consumer's debt, and which fail to identify the creditor of the consumer's debt. Such policies and practices are in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692g(a)(1), and 1692g(a)(2).

134.    It is also Defendants policy and practice to collect amounts that are incidental to the principal obligation, which amounts are not expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692f(1).

135.    It is further Defendants policy and practice to send written collection communications, in the form attached as ***Exhibit A*** in connection with the collection of alleged consumer debts, which make false, deceptive, and misleading representations regarding the current balance due on an alleged debt, while also failing to provide information on how to obtain the most up-to-date balance due, and which falsely make "one-time take it or leave it" settlement offers.

136.    On information and belief, the Defendants' written communications, in the form attached as ***Exhibit A*** and as alleged in this complaint under the Facts Concerning Plaintiff, number in at least the hundreds.

## VI. CLASS ALLEGATIONS

137.    This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

138.    Plaintiff seeks to certify two classes as set forth, and defined, *infra*.

139.    With respect to the First Plaintiff Class, this claim is brought on behalf of a class of (a) all persons with addresses in the State of Michigan; (b) to whom DYNIA & ASSOCIATES sent a written communication materially similar to the form attached as ***Exhibit A***; (c) in an attempt to collect a debt on behalf of SECOND ROUND that was incurred for personal, family, or household purposes; (d) which was not returned as undeliverable by the United States Postal Service; (e) during the period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.

140.    With respect to the Second Plaintiff Class, this claim is brought on behalf of a class of (a) all persons with addresses in the State of Michigan; (b) to whom DYNIA & ASSOCIATES sent a written communication materially similar to the form attached as ***Exhibit A***; (c) in an attempt

to collect a debt on behalf of SECOND ROUND that was incurred for personal, family, or household purposes; (d) which was not returned as undeliverable by the United States Postal Service; (e) during the period beginning two years prior to the filing of this action and ending 21 days after the filing of this action.

141.    The identities of all class members are readily ascertainable from the business records of DYNIA & ASSOCIATES, SECOND ROUND, and the unknown creditor of the Synchrony Obligation.

142.    Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and each of their respective immediate families, and legal counsel for all parties to this action and all members of their respective immediate families.

143.    There are questions of law and fact common to First Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendants' initial written communications, in the form attached as ***Exhibit A***, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692g(a)(1), 1692g(a)(2), 1692f, and 1692f(1).

144.    There are questions of law and fact common to Second Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendants' initial written communications, in the form attached as ***Exhibit A***, violate Tex. Fin. Code §§ 392.303(a)(2), 392.304(a)(4), 392.304(a)(8), 392.304(a)(19), and 392.304(a)(4).

145.    The Plaintiff's claims are typical of the class members, as all claims are based upon the same facts and legal theories.

146.    The Plaintiff will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

147.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)    **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Classes defined above are so numerous that joinder of all members would be impractical.

(b)    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members. The principal issue is whether the Defendants' written communications, in the form attached as ***Exhibit A***, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692g(a)(1), 1692g(a)(2), 1692f, and 1692f(1), as well as Tex. Fin. Code §§ 392.303(a)(2), 392.304(a)(4), 392.304(a)(8), 392.304(a)(19), and 392.306.

(c)    **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff Classes have claims arising out of the Defendants' common uniform course of conduct complained of herein.

(d)    **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff

has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel has any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

(e)     **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

148.    Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendants, who collect debts throughout the United States of America.

149.    Certification of a class(es) under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that a determination that SECOND ROUND's written communications, in the form attached as ***Exhibit A***, violates Tex. Fin. Code §§ 392.303(a)(2), 392.304(a)(4), 392.304(a)(8), 392.304(a)(19), and 392.306 would permit Plaintiff and the Plaintiff Classes to obtain injunctive relief pursuant to Tex Fin. Code § 392.403(a)(1).

150.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

151.     Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to modify the class definition and/or certify a class only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

### VII. FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST ALL DEFENDANTS)

152.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

153.     Defendants violated the FDCPA. Defendants' violation, with respect to their written communications in the form attached as ***Exhibit A*** include, but are not limited to, the following:

(a)     Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

(b)     Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

(c)     Making false, deceptive, and misleading representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. §1692e(2)(B)

(d)     Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10);

(e)     Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f;

(f)     Collecting amounts that are incidental to the principal obligation, which amounts are not expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692f, and 1692f(1);

(g)     Failing to correctly state the amount of the debt owed in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692g(a)(1); and

(h)     Failing to provide the name of the creditor to whom the debt is owed in violation of 15 U.S.C. § 1692e, 1692e(2)(A), and 1692g(a)(2).

<u>**VIII.  SECOND CAUSE OF ACTION**</u>
**VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT**
**(AGAINST DEFENDANT, SECOND ROUND, LP)**

154.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint. 392.303(a)(2), 392.304(a)(4), 392.304(a)(8), 392.304(a)(19), and 392.306.

155.    SECOND ROUND violated Tex. Fin. Code § 392.303(a)(2) by sending written communications, in the form attached as ***Exhibit A*** include, that attempt to collect interest or a charge, fee, or expense incidental to the obligation that is not expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.

156.    SECOND ROUND violated Tex. Fin. Code § 392.304(a)(4) by sending written communications, in the form attached as ***Exhibit A*** include, that fail to disclose the name of the person to whom the debt has been assigned or is owed when making a demand for money.

157.    SECOND ROUND violated Tex. Fin. Code § 392.304(a)(8) by sending written communications, in the form attached as ***Exhibit A*** include, that misrepresent the character, extent, or amount of a consumer debt.

158.    SECOND ROUND violated Tex. Fin. Code § 392.304(a)(19) by sending written communications, in the form attached as ***Exhibit A*** include, that use and make other false representations and/or deceptive means to collect a debt or obtain information concerning a consumer.

159.    SECOND ROUND violated Tex. Fin. Code § 392.306 by using DYNIA & ASSOCIATES to collect debts on its behalf despite having actual knowledge that the independent debt collector repeatedly or continuously engages in acts or practices that are prohibited by the TDCPA.

## IX. PRAYER FOR RELIEF

160.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and in favor of the Plaintiff Class as follows:

A.      **For the FIRST CAUSE OF ACTION**:

(i)     An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the First Plaintiff Class as previously set forth and defined *supra*;

(ii)    An award of the maximum statutory damages for Plaintiff and the First Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(iii)   An award of actual damages for Plaintiff and the First Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(1);

(iv)    For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudging Defendants' collection letter, which is attached hereto as ***Exhibit A***, and which is complained of herein, violates the FDCPA;

(v)      Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(vi)      For such other and further relief as may be just and proper.

B.      **For the SECOND CAUSE OF ACTION**:

(i)      An order certifying that the Second Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and Tex Fin. Code § 392.403(a), and appointing Plaintiff and the undersigned counsel to represent the Second Plaintiff Class as previously set forth and defined above.

(ii)      An award of actual damages for Plaintiff and the Second Plaintiff Class, including all amounts collected for the "3% processing fee," pursuant to Tex Fin. Code § 392.403(a)(2) in an amount to be determined at trial;

(iii)      For injunctive relief for Plaintiff and the Second Plaintiff Class pursuant to Tex. Fin. Code § 392.403(a)(1), including enjoining SECOND ROUND from engaging in further violations of Chapter 392 of the Texas Finance Code as complained of herein;

(iv)      For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudicating that SECOND ROUND's collection conduct complained of herein violates the violates the TDCPA;

(v)      Attorney's fees, litigation expenses, and costs pursuant to Tex Fin. Code § 392.403(b); and

(vi)      For such other and further relief as may be just and proper.

## X. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

Respectfully submitted this 17th Day of September 2014.

*s/ Brian P. Parker*
Brian P. Parker, Esq. (P48617)
LAW OFFICES OF BRIAN PARKER, P.C.
30600 Telegraph Road, Suite 1350
Bingham Farms, MI 48025
Telephone: (248) 642-6268
Facsimile:  (248) 642-8875
E-Mail: brianparker@collectionstopper.com

Andrew T. Thomasson, Esq.
THOMASSON LAW, LLC
101 Hudson Street, 21st Floor
Jersey City, New Jersey 07302
Telephone: (201) 479-9969
Facsimile:  (855) 479-9969
E-Mail: andrew@thomassonllc.com

*Attorneys for Plaintiff, Patricia Boucher, and all others similarly situated*
